J-S41042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
               Appellee :
:
             v. :
:
TOMMY TIBURCIO :
:
             Appellant : No. 1816 MDA 2016

Appeal from the Judgment of Sentence September 29, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001319-2016

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED JUNE 26, 2017**

Appellant, Tommy Tiburcio, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his jury trial convictions for one (1) count each of possession of a controlled substance ("POCS")—heroin, POCS—cocaine, conspiracy to commit POCS—heroin, conspiracy to commit POCS—cocaine, possession with intent to deliver ("PWID")—cocaine, PWID—heroin, conspiracy to commit PWID—cocaine, conspiracy to commit PWID—heroin, and possession of drug paraphernalia.[1] We affirm.

The trial court opinion sets forth the relevant facts and procedural

_____

[1] 35 P.S. § 780-113(a)(16), 18 Pa.C.S.A. § 903, 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903, 35 P.S. § 780-113(a)(32), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

history of this case as follows:

**FACTS**

On February 16, 2016, Criminal Investigator David Haser executed a search warrant for 1321 Hickory Street, located in the City of Reading, Berks County. This house was secured with security cameras and a fortified door. When initially entering the house, C.I. Haser and other Officers immediately proceeded to the kitchen. In the kitchen, in plain sight C.I. Haser observed a black revolver on the counter, later identified as a Colt Python. Looking up the stairs, C.I. Haser observed [Appellant] on the ground. Appellant was [detained shortly] thereafter. Proceeding further into the house, Carlos Armenta Villa, Co-Conspirator, was also discovered and detained.

After arresting Appellant, the house was searched by numerous officers who identified evidence. It was C.I. Haser's ultimate responsibility to collect all this evidence. As the amount of evidence discovered was considerable, we shall address what was found in each room separately.
…

In the kitchen, the following evidence was discovered. As already stated, on top of the kitchen counter, a Colt Python revolver was found. Experts for the Commonwealth testified that Appellant had possessed the firearm, as his fingerprints were found on the gun. Within feet of the revolver, under the sink, was a large Tommy Hilfiger Purse. This purse contained large quantities of heroin and cocaine, a cutting agent, a grinder, rubber bands, a scale, glassine baggies, sandwich bags, and a strainer. An additional bag contained more heroin, cutting agent, and a large box of empty packaging material. Additionally, a brown paper bag was discovered containing cocaine and heroin, which was already packaged for street sale.

Moving on to the bedroom, additional quantities of heroin were discovered. While some of this heroin had already been processed for individual sale, a significant quantity of heroin was found in bulk form.

Finally, additional evidence of drug distribution was found in the basement. In the basement, a second revolver was exposed, as well as ammunition for this weapon. Moreover, the officers found 36 boxes of packaging material, containing 300 glassine baggies each, and a press, which is used to press the drugs back into a bulk form.

At trial, the Co-Conspirator also testified. He stated that he lived at the searched residence and that he also sold drugs there. However, the Co-Conspirator also stated that Appellant was permitted to use the house during the day to sell and cook narcotics. Additionally, the Co-Conspirator testified that Appellant had offered a bribe of $5,000—$10,000 for him [to] claim that [Appellant] had "no knowledge" of the drug activities.

Considering all this evidence, a qualified Commonwealth expert, Criminal Investigator Brian Errington, testified as to how the paraphernalia and quantity of narcotics was indicative of someone who intended to distribute drugs, and not a user. First, in reaching this conclusion the expert relied upon the fact that there was no evidence of paraphernalia for personal use. Additionally, the expert considered that presence of cutting agents, a drug press, and boxes of glassine baggies tended to indicate that Appellant wished to process the drugs in a fashion to maximize profit, by stretching supply and selling in profitable quantities, opposed to using the drugs. Also, the expert stated that the weapons found at the house and the security measures were indicative of a house used for dealing and storing drugs, as these measures are commonly needed to protect Appellant from other drug dealers. Finally, in reaching his ultimate conclusion, the expert estimated the total value of the drugs found at the house. In street value, there was approximately $220,000 of heroin and $27,000 of cocaine.

(Trial Court Opinion, dated February 14, 2017, at 2-4).

The court outlined the procedural history as follows:

**PROCEDURAL HISTORY**

On September 29, 2016, a jury convicted [Appellant] of the following offenses:

1. Possession of a Controlled Substance ("POCS")—Heroin;
2. POCS—Cocaine;
3. Conspiracy to Commit POCS—Heroin;
4. Conspiracy to Commit POCS—Cocaine;
5. Possession with Intent to Deliver a Controlled Substance ("PWID")—Cocaine;
6. PWID—Heroin;
7. Conspiracy to Commit PWID—Cocaine;
8. Conspiracy to Commit PWID—Heroin;
9. Possession of Drug Paraphernalia.

After being convicted, Appellant was sentenced to several consecutive sentences. The first period of incarceration, lasting from 54 to 120 months, was received for the PWID—Heroin. The second period of incarceration, lasting 48 to 120 months, was received for the PWID—Cocaine. The third period of incarceration, lasting 48 to 96 months, was received for Conspiracy to Commit PWID—Heroin. The fourth period of incarceration, lasting 36 to 72 months, was received for Conspiracy to Commit PWID—Cocaine. Appellant was made RRRI eligible for all these sentences. Additionally, Appellant was sentenced to one (1) year probation for possession of drug paraphernalia.

Following sentencing, by and through counsel, Appellant filed a post-sentence motion for a new trial and modification of sentence, on October [5], 2016. [The trial court] denied this motion on October 6, 2016. On November 4, 2016, Appellant, now represented by the public defender, filed a notice of appeal. Subsequently, Appellant petitioned the Court for an extension to file a concise statement, which we granted. A Concise Statement was then filed on December 27, 2016.

(*Id.* at 1-2).

Appellant raises one issue on appeal:

WHETHER THE VERDICT OF GUILTY FOR THE CRIMES OF POSSESSION WITH INTENT TO DELIVER, USE OR POSSESSION OF PARAPHERNALIA, CONSPIRACY, AND

- 4 -

POSSESSION OF A CONTROLLED SUBSTANCE, IS CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL WHEN A COMMONWEALTH WITNESS (AND CO-DEFENDANT) WAS HIGHLY MOTIVATED BY SELF-PRESERVATION; NO DRUGS WERE FOUND ON APPELLANT'S PERSON, NONE OF APPELLANT'S PERSONAL EFFECTS WERE FOUND AT THE SEARCHED HOME, AND THE EXISTENCE OF A PROTECTION FROM ABUSE (PFA) ORDER EVICTING APPELLANT FROM HIS HOME IS HIGHLY PROBATIVE THAT APPELLANT WAS MERELY PRESENT AT THE CRIME SCENE?

(Appellant's Brief at 9).

Appellant argues the verdict was against the weight of the evidence for several reasons. First, Appellant asserts the testimony of Commonwealth witness, co-defendant Carlos Armenta-Villa, was not credible because he was highly motivated by self-preservation, *i.e.*, he was illegally present in the United States and faced possible deportation if convicted. Second, Appellant contends his "mere presence" at the scene was not enough to support his convictions. Appellant emphasizes there was no evidence that Appellant had access to the entire home or possession of, or control over, the drugs discovered there; and police did not discover any of Appellant's personal effects in the home. Moreover, Appellant claims he could establish his presence at the home based on a Protection from Abuse ("PFA") order, issued just hours before the search occurred, that evicted Appellant from his own home. Appellant submits the weight of the Commonwealth's evidence did not support the jury's guilty verdict. For these reasons, Appellant concludes he is entitled to a new trial. We disagree.

As a preliminary matter, generally, a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. *Commonwealth v. Burkett*, 830 A.2d 1034 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. *Id.*

With respect to our standard of review for a challenge to the weight of the evidence, we observe:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted). "A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Commonwealth v. Lyons*, 622 Pa. 91, 116, 79 A.3d 1053, 1067 (2013), *cert. denied*, 134 S.Ct. 1792, 188 L.Ed.2d 761 (2014). "[C]redibility determinations are made by the fact finder and…challenges thereto go to the weight…of the evidence." *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997).

"Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super. 2005). "The intent to exercise conscious dominion can be inferred from the totality of the

circumstances." *Id.* "Constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

Instantly, Appellant filed a post-sentence motion that included a challenge to the weight of the evidence and requested a new trial. *See* Pa.R.Crim.P. 607. The issues Appellant presented in this regard were:

> 15. [Appellant] avers that the verdicts are contrary to the weight of the evidence as the testimony at the trial was not credible to show that [Appellant] possessed the cocaine or heroin.
>
> 16. [Appellant] avers that the verdicts are contrary to the weight of the evidence as the testimony at the trial was not credible to show that [Appellant] conspired with Carlos Armenta-Villa to commit the crimes of Possession of a Controlled Substance (both cocaine and/or heroin) or Possession with the Intent to Deliver a Controlled Substance (both cocaine and/or heroin).
>
> 17. [Appellant] avers that the verdicts are contrary to the weight of the evidence as the testimony at trial was not credible to show that [Appellant] possessed the drug paraphernalia.
>
> 18. [Appellant] avers that the verdicts are contrary to the weight of the evidence as the testimony at trial was not credible to show that [Appellant] possessed with the intent to deliver a controlled substance (both cocaine and/or heroin).
>
> 19. **[Appellant] avers that the co-defendant's testimony was not credible and was contradicted by other witnesses.**
>
> 20. The verdicts of guilty are against the weight of the evidence and [Appellant] is otherwise entitled to

appropriate relief because the Commonwealth did not establish by credible evidence the requisite elements of Possession of a Controlled Substance (both cocaine and/or heroin), Conspiracy to Commit Possession of a Controlled Substance (both cocaine and/or heroin), Possession with the Intent to Deliver a Controlled Substance (both cocaine and/or heroin), Conspiracy to Commit Possession with the Intent to Deliver a Controlled Substance (both cocaine and/or heroin), and Possession of Drug Paraphernalia.

(*See* Post-Sentence Motion, filed 10/5/16, at 3-4 unpaginated) (emphasis added). In his Rule 1925(b) statement, Appellant presented the following weight challenge:

The verdict of guilty to all charges is contrary to the weight of the evidence presented at trial when co-defendant and prosecution witness Carlos Armenta Villa was not credible, **as he had an interest in making allegations against the Appellant to avoid deportation, and as he did not implicate the Appellant at the time of arrest**; when defense witness Nathaly Salazar stated she had kicked the Appellant out of their house on the night of the arrest pursuant to a valid Protection from Abuse (PFA) order issued hours before Appellant's arrest at the site of the underlying crimes; and when the Appellant had no personal belongings, other than those on his person, found at the site of the underlying crimes.

(*See* Rule 1925(b) Statement, filed 12/27/16, at 1-2 unpaginated) (emphasis added). When we compare Appellant's generic claim regarding the credibility of his co-defendant's testimony, as raised in Appellant's post-sentence motion, with the more specific claim regarding his co-defendant's credibility due to self-preservation in seeking to avoid deportation, as raised for the first time in his Rule 1925(b) statement, we must conclude Appellant did not properly preserve this particular aspect of his weight issue. So it is

arguably waived for purposes of appellate review. **See** Pa.R.Crim.P. 607; ***Gillard, supra***; ***Burkett, supra***.

Moreover, the trial court did not specifically address this concern in its analysis. Nevertheless, the record reveals the witness' credibility in this regard was fully pursued at trial through cross-examination and included in the jury instructions. Thus, even if Appellant had properly preserved this aspect of his weight claim for appellate review, we would see no error in the court's decision to deny relief. **See Champney, supra** (explaining weight of evidence is exclusively for finder of fact who is free to believe all, part, or none of evidence and to determine credibility of witnesses; this Court cannot substitute its judgment for that of fact-finder and may reverse verdict only if it is so contrary to evidence as to shock one's sense of justice).

In response to Appellant's remaining weight claims, the trial court reasoned:

> Appellant argues that all his convictions are against the weight of the evidence.
>
> The weight of trial evidence is a choice for the fact-finder. **Commonwealth v. West**, 937 A.2d 516, 521 (Pa.Super. 2007). Where the fact-finder renders a guilty verdict and the defendant files a motion for a new trial on the basis that the verdict was against the weight of the evidence, "a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Stays**, 70 A.3d 1256, 1267 (Pa.Super. 2013)....
>
> When an Appellant challenges a trial court's denial of a post-sentence motion for new trial based on the weight of the evidence, the standard of review is limited to whether

the trial court abused its discretion:

> We do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> **West**[**, supra** at 521]. An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." **Id.** (citations omitted). A proper exercise of discretion, by contrast, "conforms to the law and is based on the facts of record." **Id.**
>
> The Commonwealth introduced evidence that Appellant constructively possessed and intended to distribute significant quantities of heroin and cocaine. Primarily, to accomplish this, C.I. Errington, testified that [Appellant] constructively possessed significant amounts of material needed to process, protect, and sell narcotics. Additionally, C.I. Haser presented copious evidence that the stash house contained significant quantities of both cocaine and heroin. Also, the Co-Conspirator testified that he witnessed [Appellant] sell cocaine and heroin from the house. Finally, tying this altogether, Commonwealth witnesses testified that Appellant's fingerprint[s were] found on a firearm at the stash house, where [Appellant] was initially arrested and all the aforementioned evidence was uncovered. As such, the guilty verdicts, when weighed against the relevant law and against the facts as elucidated above, do not reveal any partiality, prejudice, bias or ill will, nor do the verdicts shock one's sense of justice. In light of the testimony and physical evidence which was presented to the jury, we see no reason to conclude that the jury's verdict was contrary to the weight of the evidence.

(Trial Court Opinion at 7-8). The record supports the court's analysis. The

totality of the Commonwealth's evidence produced a sufficient nexus between Appellant, the stash house, and the contraband recovered from the stash house.  Based on the foregoing, we see no abuse of discretion in the trial court's assessment of Appellant's weight of the evidence claim.  ***See Lyons, supra***; ***Champney, supra***.  Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/2017