613 A.2d 548

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Angel VALETTE, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 4, 1992.

Decided Sept. 18, 1992.

Thomas L. Kearney, III, Asst. Public Defender, for appellant.

William H. Graff, Christy H. Fawcett, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA PAPADAKOS and CAPPY, JJ.

## OPINION

PAPADAKOS, Justice.

The appellee, Angel Valette, was convicted of possession of a controlled substance with intent to deliver [1] following a jury trial in the Court of Common Pleas of York County. He appealed his judgment of sentence to the Superior Court, which affirmed.[2] He thereafter filed a petition for allowance of appeal with this Court, which we granted, limited to examining the parameters of the theory of constructive possession.

■ The convictions arose from evidence obtained in a police search of a two story apartment in York Pennsylvania. On November 15, 1988, police in possession of a search warrant raided the apartment unit. The living room was the first room entered by the police and was on the first story of the two story apartment. Co-defendant Felix Sanchez had admitted the police officers. Upon entry through the front door of the apartment they saw petitioner and co-defendant Carlos Delapaz sitting in the living room eating. Upon entering the kitchen which was located on the same floor, the police found co-defendant Teofilo Sarcedo. Officers located co-defendant Sonia Ramos in the bathroom of the apartment. Police secured the area and assembled all the occupants into the kitchen and proceeded to search the premises.

During the search of the living room, the police found the following in a closet on the top shelf: $1500.00 in cash hidden in a book, Dominican Republic passports bearing the names of co-defendants Sanchez and Delapaz, and a birth certificate of co-defendant Ramos.

In the kitchen they found approximately two grams of cocaine in packets hidden behind a metal cabinet, and in the metal cabinet itself was a phone beeper and a photograph of petitioner, co-defendant Sarcedo, and two other unidentified males. On the kitchen table, the police found identification papers of co-defendants Sonia Ramos and Teofilo Sarcedo.

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, 35 P.S. § 780–113(a)(30).

2. 409 Pa.Super. 658, 589 A.2d 1178 (1991).

The police searched the second floor of the two floor apartment. In a bedroom they discovered a closed briefcase hidden beneath floorboards. In the briefcase they found 283 grams of cocaine, a sifter, plastic bags and a cellular phone. Also beneath the floorboards was a triple beam balance and a plastic bag containing a residue of some sort. A wallet bearing identification for co-defendant Sarcedo was found under a mattress.

A search was also conducted of the individual defendants. As a result, keys fitting the door locks of the apartment were found in co-defendant Delapaz's pants pocket, and $217.00 in cash was found on co-defendant Sarcedo's person. Apart from the various forms of identification and $1,500.00 in cash found hidden in the living room closet, nothing incriminating was found within the room where appellant was situated at the time of the raid, and appellant possessed no contraband on his person.

The police arrested all the occupants of the apartment and charged them with various counts of possession and possession with intent to deliver controlled substances. One of the defendants pleaded guilty to simple possession and was not tried. The remaining defendants, including petitioner, were tried together despite the objections of counsel. The appellant's counsel moved for a demurrer on the charges against his client, but the demurrer was denied. Appellant was ultimately convicted of possession with intent to deliver a controlled substance. Post trial motions were filed and denied, and the appellant was sentenced to serve a period of incarceration of not less than four (4) nor more than eight (8) years. On appeal, the Superior Court affirmed.

As noted above, we granted petition for allowance of appeal for the purpose of examining whether the lower courts applied the proper test in assessing whether appellant had constructive possession of the controlled substances.

The appellant argues that the evidence was not sufficient to establish constructive possession. He contends that he merely was in the wrong place at the wrong time, and that although

he knew the co-defendants, he himself was not involved in drug dealing.

In response, the Commonwealth contends that the testimony of lay and expert witnesses, together with the physical evidence, was sufficient to prove constructive possession of the controlled substances, and hence, the evidence was sufficient to sustain the convictions.

In determining whether the Commonwealth has met its burden of proof, the test to be applied is:

> Whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered.... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. (Citations omitted).

*Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986), *citing Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979).

In drug possession cases, the Commonwealth must prove that a defendant had knowing or intentional possession of a controlled substance, and if the substance is not found on the defendant's person, then the Commonwealth must satisfy that burden by proof of "constructive possession."

This Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access. *Commonwealth*

*v. Murdrick,* 510 Pa. 305, 507 A.2d 1212 (1986). In *Macolino,* this Court further determined that "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances.... [and], circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Macolino, Id.* 503 Pa. at 206, 469 A.2d at 134. (citations omitted).

The Commonwealth's evidence included testimony by Detective John Daryman. Detective Daryman was called both as an expert and an eyewitness since he was the head of the Vice and Narcotics Unit for the York City Police Department, he was in charge of the search of the apartment, and he was first to arrive at the scene. On direct he testified: the evidence seized from the premises was common to drug dealers; that if the drugs seized were broken into packets, the estimated street value would be over $42,000; and that it was a common occurrence that drug dealers rented apartments and kept them "staffed" with workers. Further evidence was presented that the apartment was rented to one Carlos Ozono and one Rosa Diaz; that they had disappeared and other people lived in the apartment; that one of the co-defendants was seen at the apartment on a prior occasion; and that the rent was continually paid up until the arrests were made.

On recall, Detective Daryman further testified as to the purpose and use of the paraphernalia found within the apartment and that it was consistent with drug trafficking; that it was common among drug traffickers to rent apartments for dealers to occupy the space; and that here there was adequate space to sleep five individuals; and that prior to the search he observed people entering and exiting the apartment for short periods of time.

Other evidence offered by the Commonwealth included testimony by Officer Donald Way, a narcotics agent for the Office of the Attorney General involved in the search of the apartment. He testified that he found various forms of identification including wallets, passports, birth certificates and photographs throughout the apartment, and that one of the defendants possessed the key to the apartment in his pocket. Testimony by other officers at the scene was offered in proof

of the contraband and drugs seized including their location. The Commonwealth also presented testimony of Officer James M. McBride, an officer who testified that during the course of the raid he had asked the appellant whether he lived in the apartment; appellant allegedly nodded an affirmance.

At trial the Commonwealth attempted to portray appellant as a participant involved in a large drug distribution scheme. However, the only link to the narcotics confiscated from the premises was his presence and apparent acquaintanceship with the co-defendants. The record is clear that no contraband was found in the room in which the appellant was sitting at the time entry was made by law enforcement officers; and, although $1500.00 in cash was found hidden on a shelf in a closet located in the room, there was no evidence that appellant knew of its existence, or had access to it: nor is the possession of cash a crime. Moreover, no personal property of petitioner's was located in the apartment.[3] The Commonwealth placed great reliance on the "fact" that Officer McBride asked the appellant whether he lived at the premises and that appellant nodded in the affirmative. However, it was established at trial that appellant did not speak English,[4] and that the question to which appellant allegedly nodded was put to him solely in English.

It is well settled that facts giving rise to mere "association," "suspicion" or "conjecture," will not make out a case of constructive possession. *See Commonwealth v. Chenet,* 473 Pa. 181, 373 A.2d 1107 (1977); *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974); and *Commonwealth v. Tirpak et al.,* 441 Pa. 534, 272 A.2d 476 (1971). More is required.

In *Macolino, supra,* this Court held that a husband and wife can have constructive possession of drugs and paraphernalia which are seized from an area to which they had equal access:

**3.** Although a photograph was found of appellant and a co-defendant together along with a two other men, the photograph was taken at a location other than the apartment and gave no information as to appellant's residence.

**4.** Prior to trial, the trial judge made provisions for an interpreter for appellant upon trial counsel's request because appellant could not speak English. The Commonwealth acquiesced in this request.

there, the marital bedroom. In *Murdrick, supra,* we held that constructive possession was established where the defendant was shown to have kept his personal belongings in the residence where drugs were found in plain view, and he actually slept in the bedroom where other drugs were found.

In this case, the record demonstrates nothing more than that appellant was present in an apartment in which drugs were found. In order to find the drugs, the police were required to make a full search, and the most significant quantity of drugs was found in a room on a separate floor in a closed case located beneath floorboards. These facts are significantly different than those in either *Macolino* or *Murdrick,* and they do not satisfy the standards there announced for the demonstration of constructive possession.

Accordingly, the order of the Superior Court is reversed and appellant's conviction is hereby vacated.