J-S18012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KASHIF PUMPHREY, | |
| Appellant | No. 297 EDA 2014 |

Appeal from the Judgment of Sentence Entered January 10, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001892-2013

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                      **FILED APRIL 30, 2015**

Appellant, Kashif Pumphrey, appeals from the judgment of sentence of 10-20 years' incarceration imposed following his conviction for attempted murder, aggravated assault, robbery, several violations of the Uniform Firearms Act, and possessing an instrument of crime.  Appellant claims the Commonwealth failed to provide sufficient evidence to sustain his convictions for attempted murder, aggravated assault, and robbery.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

On September 2, 2012, at approximately 1:00 a.m., Philadelphia Police Officer Scher was working in full uniform, in a marked patrol car, when he received a radio call for gunshots [fired] at 53rd and Arch…. [When he arrived at the scene, Officer Scher] observed empty shell casings and projectiles on the Arch Street side of the Hypnotic Lounge, which is located at 53rd and Arch Streets.  The area was secured for the Southwest Detectives.

On September 2, 2012, at 1:02 a.m., Philadelphia Police Officer Howard was working in full uniform, in a marked patrol car, when he received a radio call for gunshots at 53rd and Arch Streets. He turned on his lights and siren[], drove southbound on 52nd Street and made a westbound turn onto the 5200 block of Race Street. As he turned the corner, he observed a black male holding his waistband and running eastbound on Race Street, towards 52nd Street.

Officer Howard stopped and exited his vehicle, to stop the male. The male was crouched behind a white vehicle, at the corner of 52nd and Race Streets. Officer Howard heard something hit the ground; it sounded like metal. The male then rose and began to run. Officer Howard commanded the male to stop, but he did not comply. Officer Howard stopped the male, at gunpoint, in the middle of the intersection of 52nd and Race Streets.

Officer Howard cuffed and secured the male, who he identified as the person sitting in the courtroom, next to counsel – [Appellant], Kashif Pumphrey.[1] Officer Howard then returned to the white vehicle, where he observed a silver handgun, under the vehicle. The handgun was left for recovery by the Southwest Detectives. Officer Howard was also handed a 9mm Luger bullet by Officers Santiago and Dang, who transported [Appellant into custody].

_____

[1] [Appellant] told Officer Howard that he lived at 225 North Creighton Street, which is approximately one half of a block from the intersection at 52nd and Race Streets.

_____

In the early mottling hours of September 2, 2012, Philadelphia Police Officer Lyczak responded to a 911 call, for a fire alarm at the Presbyterian Hospital. When he entered the hospital, the security staff asked him if he was there for the shooting victim.[2] Officer Lyczak went to question the victim, Tyreek Dekeyser. Mr. Dekeyser was in stable condition. He told Officer Lyczak what had happened and he provided a description of the person that shot him. Officer Lyczak notified the detectives and he put the information out, over the police radio.

_____

[2] [Appellant] was admitted to Presbyterian Hospital on September 2, 2012, at 1:19 a.m.

_____

Detective Manko, of Southwest Detectives, went to 53rd and Arch Streets to investigate the shooting, outside the Hypnotic Bar. The scene was secured by uniform patrol; nothing was touched. He observed five 9mm fired cartridge casings, two copper bullet fragments, keys and a lanyard. He subsequently observed and recovered a colostomy bag, around the corner, within the 100 block of Peach Street. He learned of the colostomy bag while speaking to the victim, at Presbyterian Hospital.

Detective Manko was aware of a gun being recovered and an arrest being made. He had [Appellant] brought to the hospital, for viewing by the victim. The victim did not identify [Appellant]. The victim noted that during the incident, his colostomy bag had come off and that he had run on a side street. Detective Manko returned to the crime scene. He recovered the colostomy bag from the area of 128 Peach Street, approximately 100 to 200 feet from the ballistic evidence. He recovered the gun from underneath a white car, near 52nd and Race Streets. He cleared the gun, which was operable and he recovered four live 9mm cartridges. He recovered a fifth 9mm cartridge from Officer Howard.

Officer Weitman, who is assigned to the Firearms Identification Unit, assisted in the analysis of the recovered ballistics evidence: a semiautomatic, 9mm Smith & Wesson; five, live Remington, 9mm Luger cartridges; five, fired Remington, 9mm Luger cartridge cases; and, two copper bullet fragments. The bullet fragments were crushed, torn and twisted, indicating that the bullets had hit, or gone through, a hard object. Following a test firing, it was determined that the recovered fired cartridges, as well as the bullet fragment, were fired from the recovered gun.

Tyreek Dekeyser, the victim, testified that on September 2, 2012, at approximately 1:00 a.m., he was on 52nd Street, around Race or Market Street, for the purpose of going to a store located on 52nd Street, somewhere between Market and Vine Streets.[3] Mr. Dekeyser testified that while he was on 52nd Street, a man, who was attempting to rob him, grabbed his colostomy bag, which came off and as Mr. Dekeyser ran away, the man fired up to four gunshots, one of which struck him in the back of his left calf.

_____

[3] At the time of trial Mr. Dekeyser was-on probation, for a firearms charge.

_____

Mr. Dekeyser described the aforementioned male as a tall, skinny guy, with a dark complexion and no facial hair and wearing an all[-]black hoodie. Mr. Dekeyser testified that as a result of the gunshot wound, he underwent surgery, with a metal plate and screws implanted in his left leg and, that following the surgery, he was immobile for a period of time and he had to learn to walk again.

Mr. Dekeyser testified that he did [not] report the incident because he does not like cops. He testified that he talked to the police because they came to him. Mr. Dekeyser testified that he did not want to be in court and that he came to court because his parole officer told him he [] had to do so. He testified that [Appellant] was not the man who robbed him and that he had told this to the police when they brought [Appellant] to the hospital. He testified that he was not scared at the time of the incident because he had been shot plenty of times.

On September 2, 2012, at approximately 1:00 a.m., Philadelphia Police Officer Santiago was assigned the 1901 wagon, which is used for prisoner transport. He responded to 52nd and Race Streets based upon Officer Howard's arrest of [Appellant]. He transported [Appellant] to 55th and Pine Streets. Upon taking over custody from Officer Howard, Officer Santiago did a thorough search of [Appellant] and at that time, he recovered a live 9mm bullet from [Appellant]'s right pants pocket. Officer Santiago gave the bullet to Officer Howard, who was the arresting officer.

Trial Court Opinion (TCO), 9/11/14, 1-5 (internal citations omitted).

As noted above, Appellant was arrested on September 2, 2012, immediately following the shooting of Tyreek Dekeyser. Thereafter, he was charged with attempted murder (18 Pa.C.S. § 901), aggravated assault, (18 Pa.C.S. § 2702), robbery (18 Pa.C.S. § 3701), three firearm offenses (18 Pa.C.S. §§ 6105, 6106, and 6108), and possessing an instrument of crime

(18 Pa.C.S. § 907). Appellant waived his right to a jury trial. His bench trial, before the Honorable Sean F. Kennedy of the Court of Common Pleas of Philadelphia County, began on November 4, 2013. On November 5, 2013, the trial court found Appellant guilty on all counts. On January 10, 2014, Appellant was sentenced to an aggregate term of 10-20 years' incarceration.[1] Appellant filed a timely notice of appeal on January 13, 2014, and a timely Pa.R.A.P. 1925(b) statement on July 17, 2014. The trial court filed its Rule 1925(a) opinion, dated September 8, 2011, on September 11, 2014.

Appellant now presents the following question for our review:

A. Did the Commonwealth prove beyond a reasonable doubt the element of each crime that Appellant was convicted of?

Appellant's Brief, at 3.

Despite the broad scope of Appellant's statement of the question involved, it is clear from the argument section of his brief that he is only challenging the sufficiency of the evidence pertaining to his convictions for attempted murder, aggravated assault, and robbery. Common to each claim is his assertion that there was insufficient evidence to establish his identity as the perpetrator of these crimes. Indeed, Appellant's contention that the

---

[1] Appellant received consecutive sentences of incarceration of 7½-15 years and 2½-5 years, respectively, for attempted murder and person not to possess a firearm (18 Pa.C.S. § 6105). He was also sentenced to concurrent term of 2½-5 years' incarceration for robbery.

evidence was insufficient to support his convictions for attempted murder and aggravated assault are exclusively identity-based claims.

With respect to all of Appellant's claims, we adhere to the following standard of review:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant first claims that the Commonwealth failed to prove his identity as Dekeyser's assailant. Appellant maintains that 1) he did not match the description of the assailant initially given by Dekeyser; 2) Dekeyser refused to identify him as his assailant; and 3) the bullet lodged in Dekeyser's leg was never matched to the handgun abandoned by Appellant. For these reasons, Appellant argues that the evidence was not sufficient to establish that he was the perpetrator of the attempted murder, aggravated assault, and robbery charges for which he was convicted.

The Commonwealth's evidence established that Appellant was found discarding a handgun while in flight from the crime scene moments after the

shooting occurred. That gun was matched to ballistics evidence found at the scene of the shooting. Appellant's evasive behavior when confronted by Officer Howard, including his attempt to discard his handgun, constituted evidence of Appellant's consciousness of guilt. These combined circumstances constitute sufficient evidence of Appellant's identity as Dekeyser's assailant. It has long been established that the Commonwealth's burden to "establish every essential element of a crime beyond a reasonable doubt … may be sustained by means of wholly circumstantial evidence." *Commonwealth v. Stanley*, 309 A.2d 408, 410 (Pa. 1973); *see also Commonwealth v. Chambers*, 599 A.2d 630, 635 (Pa. 1991) ("Circumstantial evidence can be as reliable and persuasive as eyewitness testimony and may be of sufficient quantity and quality to establish guilt beyond a reasonable doubt.").

Moreover, Appellant's specific arguments regarding the identity evidence are geared toward a weight-of-the-evidence claim, not a sufficiency-of-the-evidence claim. The Trial Court disregarded Dekeyser's refusal to identify Appellant as his assailant:

> Although Mr. Dekeyser testified that the Defendant was not the man that shot him, the Trial Court rejected this testimony. In reaching this determination the court took into consideration [] the Defendant's testimony that he did not like the police, that he did not want to report his assailant to the police, that he did not want to come to court and present testimony relative to the incident in question and that he was not fearful of violent crime. Mr. Dekeyser made it clear to the court that he had no respect for the law or enforcement of the law. Moreover, notwithstanding Mr. Dekeyser's testimony to the contrary, the

- 7 -

Commonwealth presented overwhelming evidence that the Defendant was indeed the shooter.

TCO, at 7.

Additionally, while the bullet lodged in the victim's leg was not matched to the handgun discarded by Appellant, the other ballistic evidence recovered from the scene of the shooting did match that weapon. Furthermore, the ballistics evidence, as well as the other circumstantial evidence establishing Appellant's identity as the assailant in this case described above, are at odds with any doubt arising from any discrepancy with the initial identification information provided by the victim. The trial court was free to reject or discredit any evidence concerning the initial description provided by the victim, particularly due to the victim's admitted aversion towards assisting the police in this case. Thus, Appellant's complaints concern the weight of the evidence, not its sufficiency. It is axiomatic that "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." *Commonwealth v. Valette*, 613 A.2d 548, 549 (Pa. 1992) (quoting from *Commonwealth v. Griscavage*, 517 A.2d 1256, 1257 (Pa. 1986).

Accordingly, we conclude that the evidence was sufficient to establish Appellant's identity as the shooter in this case. Consequently, Appellant's sufficiency claims concerning his convictions for attempted murder and aggravated assault are meritless.

Appellant offers a separate argument concerning his conviction for robbery. He asserts that because a theft did not occur, a robbery could not have occurred. He argues that "the appropriate charge would have been attempted robbery, but not robbery, given that nothing was taken." Appellant's Brief at 16.

"A person is guilty of robbery if, **in the course of committing a theft**, he: (i) inflicts serious bodily injury upon another[.]" 18 Pa.C.S. § 3701(1)(i) (emphasis added). Furthermore, "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S. § 3701(a)(2).

In **Commonwealth v. Robinson**, 936 A.2d 107 (Pa. Super. 2007), the appellant argued that his acquittal for theft precluded his conviction for robbery, asserting "theft is a 'predicate offense' of robbery[.]" **Id.** at 108. We held that Robinson's claim failed because "its central premise is incorrect; the elements of theft need not be proved to support a conviction for robbery." **Id.** The court explained:

> An acquittal of theft merely translates to a finding that no theft was actually completed. Thus, for a jury to acquit on theft does not require it to acquit on robbery; the elements of theft are not sufficiently intertwined with those of robbery to compel such a result. A conviction for robbery does not require proof of a completed theft, it requires only that the requisite force was used "in the course of committing a theft," which is statutorily defined as "an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2). The acquittal for theft did not preclude the jury from finding that Appellant used requisite force during "an attempt to commit theft," in satisfaction of the robbery statute. **See Id.**

- 9 -

*Id.* at 110.

Instantly, Appellant misapprehends the relationship between theft and robbery. Contrary to his argument, a conviction for robbery does not require proof of a completed theft. **Robinson**. Therefore, Appellant's claim that the evidence was insufficient to support his conviction for robbery is also meritless.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2015