J-S23008-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS LYNN TILLMAN, | |
| Appellant | No. 821 WDA 2018 |

Appeal from the Judgment of Sentence Entered January 18, 2018
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0001061-2017

BEFORE: BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED JUNE 18, 2019

Appellant, Thomas Lynn Tillman, appeals from the judgment of sentence

of an aggregate term of 4½ to 14 years' incarceration, imposed after he was

convicted of two counts each of possession with intent to deliver (PWID), 35

P.S. § 780-113(a)(30), and possession of a controlled substance, 35 P.S. §

780-113(a)(16), as well as a single count of possession of drug paraphernalia,

35 P.S. § 780-113(a)(32). On appeal, Appellant contends that the trial court

erred by denying his motion for judgment of acquittal on his PWID offenses

because the evidence was insufficient to sustain those convictions. After

careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the evidence presented at Appellant's jury trial on the above-stated charges, as well as a charge of criminal conspiracy to commit PWID, as follows:

The evidence produced at trial by the Commonwealth consisted of the testimony offered by Patrol Lieutenant Brian T. Grooms and Lieutenant John Johnson, both of the Butler City Police Department. The Commonwealth offered the following exhibits: Commonwealth's Exhibit "1" consists of 211 bags of heroin, bundled with rubber bands and packaged for sale and 21 bags of rocks of crack cocaine; Commonwealth's Exhibit "2" is a plastic bag containing a small piece of marijuana inside an envelope that was on a table in the living room; Commonwealth's Exhibit "3" is a metal spoon that was found along with a syringe on the living room floor; Commonwealth's Exhibit "4" is a small digital scale with white powder residue; Commonwealth's Exhibit "5" is the seized mail (one envelope addressed to Mary Boring and one envelope addressed to Allan Kelly, Miss Boring's boyfriend) with [a] 200 North Washington Street, Butler, PA address; and, Commonwealth's Exhibit "6" is the Drug Identification report of October 26, 2017 [i]ssued by the Pennsylvania State Police, Bureau of Forensic Services, Greensburg Regional laboratory, authored by John J. Wall, Forensic Scientist 2. All of the exhibits were admitted without objection. [Appellant] stipulated to the admission of Commonwealth's Exhibit "6" without the testimony of the author.

At trial, Lt. Grooms testified that he has approximately 28 years of experience employed as a law enforcement officer in Florida and in Pennsylvania, currently with the Butler City Police. He testified that on April 29, 2017, while working the 8:00 p.m. to 8:00 a.m. shift as the patrol lieutenant, he had the occasion to come into contact with [Appellant]. He explained that the 911 center called the police to report that a gold Buick parked in the area of South Washington and West Wayne Streets in the city of Butler appeared to have two passed[-]out occupants, possibly overdose victims. Lt. Grooms testified that he was the first officer to arrive and observed that the vehicle was parked in front of 402 South Washington Street. A female was in the driver's seat and [Appellant] was in the passenger's seat. At this time, assisting police officers arrived on scene. Lt. Grooms tapped on the window and the occupants woke up. It appeared that the two had been

sleeping. Lt. Grooms spoke with [Appellant] while the other officers spoke with the female, [Jennifer] Thomas.

In conversation with [Appellant], Lt. Grooms was attempting to ascertain his identity. The officer ran [Appellant's] name through the 911 center for warrants, license and truthfulness. The information provided indicated that [Appellant] had a suspended driver's license from Philadelphia. [Appellant] told Lt. Grooms that he was from Philadelphia and was staying at 200 West Washington Street in Butler. Lt. Grooms testified that there is no such address in Butler city and that Washington Street runs north or south. Lt. Grooms added that he was aware of problems at 200 North Washington Street and surmised that was [the] address [Appellant] made reference to.[1] At this point [Appellant] was free to go.

Next, the Commonwealth called Lt. John Johnson of the Butler City Police. He is also a team leader on the Butler County Drug Task Force for the northern section of the county. He has served in this capacity for eighteen (18) years. He has a total of approximately twenty (20) years of experience in law enforcement. Lt. Johnson attended the police academy at Indiana University of Pennsylvania and training with the Pennsylvania Attorney General's Office. Additionally, he has participated either as an undercover or surveillance officer in thousands of drug buys over the years.

Lt. Johnson testified at trial that in April, 2017, several police officers informed him that they had observed people known by the police to be drug abusers coming and going from the 200 North Washington Street address. To that end, Lt. Johnson stated that he began to carefully observe that address during the course of his work day. He observed vehicles belonging to known drug abusers parked near the residence. He saw these individuals coming and going from the residence after a very brief stay inside. During one of the surveillance periods, Lt. Johnson observed a white male run from inside the residence. Two white females came out of the house and began yelling in the direction of the fleeing man. Lt. Johnson approached the residence and learned the fleeing man had committed a robbery inside the house. He

_____

[1] The officer also testified that there is "no actual address of 200 South Washington in the city[,]" which bolstered his presumption that Appellant meant 200 North Washington Street. N.T. Trial, 11/12/17, at 26.

- 3 -

spoke with one of the women, Mary Boring, who said she resided there. The officer advised Miss Boring of his observations and reminded her that the police station was a hundred feet from her house. Lt. Johnson continued to surveil the residence over the next two weeks of April. He stated that the activity level subsided. Then, according to his testimony, the traffic picked up around April 18, 2017.

According to Lt. Johnson's testimony, Lt. Grooms was aware of Lt. Johnson's ongoing surveillance of 200 North Washington Street. Lt. Grooms informed him of his encounter with [Appellant] and that [Appellant] said he was staying at that address. Thereafter, Lt. Johnson showed [Appellant's] photograph to Lt. Grooms who confirmed that it was the same person. Lt. Johnson testified that he and his fellow officers conducted approximately 60 to 80 hours of surveillance of this residence.

Lt. Johnson testified that on April 18, 2017, a controlled buy of crack cocaine occurred at 200 North Washington Street. Another controlled buy was conducted on May 4, 2017[,] and on that date at 9:15 p.m., Lt. Johnson executed a search warrant for 200 North Washington Street. According to the officer's testimony, when the police arrived at the address and announced their presence, no one answered the door. The front door was forced open and [Appellant] and Jennifer Thomas were located inside and detained.

[Appellant] and Miss Thomas were initially patted down for weapons and then transported to the police station where they were searched thoroughly. No drugs or paraphernalia were found on [Appellant's] person. However, a cell phone and $97.00 in cash were discovered on [Appellant]; none of the cash was connected to the controlled buys of April 18th and May 4th, 2017.

Lt. Johnson testified that the majority of the heroin and crack cocaine, with the exception of a few loose bags of heroin, were found in a box on a dresser located in the living room area. The officer stated that he encountered [Appellant] for the first time when the search warrant was executed. [Appellant] was seated on a couch in the living room. In plain view in the living room, the police recovered cocaine and heroin, and drug paraphernalia on the floor. The digital scale was found in a bedroom.

Trial Court Order and Opinion (TCOO), 5/2/18, at 2-4 (footnote omitted).[2]

Based on this evidence, the jury convicted Appellant of all of the offenses with which he was charged. On January 18, 2018, Appellant was sentenced to the aggregate term stated supra. Thereafter, he filed a post-sentence motion seeking judgment of acquittal for his conspiracy and PWID convictions. On May 2, 2018, the court issued an order granting Appellant's motion as to his conspiracy conviction, but denying his motion regarding the PWID offenses.

Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. Thereafter, the court issued a Rule 1925(a) opinion. Herein, Appellant states two issues for our review:

> I. Whether the trial court erred by denying Appellant's motion for judgment of acquittal concerning counts 1 and 2 of the information?
>
> II. Whether the trial court erred by finding that the Commonwealth presented sufficient evidence to convict [] Appellant of counts 1 and 2 of the information?

Appellant's Brief at 8 (unnecessary capitalization omitted).

Appellant's two issues both challenge the sufficiency of the evidence to sustain his PWID convictions. See Comonwealth v. Emanuel, 86 A.3d 892, 894 (Pa. Super. 2014) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and

---

[2] This order disposed of a post-sentence motion for judgment of acquittal filed by Appellant, and is relied upon by the court in its Pa.R.A.P. 1925(a) opinion.

is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge."). Thus,

> we apply the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal:
>
>> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Stahl, 175 A.3d 301, 303-04 (Pa. Super. 2017), appeal denied, 189 A.3d 389 (Pa. 2018) (quoting Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted)) (emphasis added in Stahl omitted).

Here, Appellant argues that the evidence was insufficient to sustain his PWID convictions - and, thus, the court should have granted his motion for judgment of acquittal on those counts - because he did not physically possess the drugs found in the home at 200 North Washington Street, and the Commonwealth also failed to prove that he constructively possessed those narcotics. Appellant insists that the Commonwealth proved only his mere presence in the home, which is insufficient to support his PWID conviction.

After careful review of the pertinent law and the record in this case, we are compelled to disagree with Appellant's argument.  Initially, we observe:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> Additionally, it is possible for two people to have joint constructive possession of an item of contraband.

Commonwealth v. Hopkins, 67 A.3d 817, 820–21 (Pa. Super. 2013) (internal citations omitted).

In denying Appellant's motion for judgment of acquittal regarding his PWID convictions, the court explained:

> As to [Appellant's] request for judgment of acquittal of Counts 1 and 2, [PWID] heroin and crack cocaine, respectively, the court denies the request [for judgment of acquittal].  The court believes that viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there [was] sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt.  First, the Commonwealth established that the suspected heroin and crack cocaine seized at the residence were in fact illegal substances.  Second, the Commonwealth established, with the legal argument of constructive possession, that [Appellant] possessed the illegal substances and that he was aware of their presence in the residence.  Lastly, the Commonwealth established that the quantity and the packaging of the illegal substances proved intent to deliver.

\* \* \*

> The evidence produced at trial revealed that [Appellant] was staying at 200 North Washington Street in April and May, 2017. Police surveillance revealed that there was significant foot traffic in and out of the residence during this same time period. Controlled buys of illegal drugs were conducted at the residence in April and May, 2017. Finally, [Appellant] was in the living room of the residence when the search warrant was executed and evidence of illegal drug use was also discovered in plain view in the living room. The illegal drugs packaged for sale, although not in plain view, were also discovered in the living room. The court has determined that[,] by an examination of the totality of the circumstances, a jury could find that [Appellant] possessed the packaged heroin and crack cocaine, albeit, constructively.

TCOO at 5 (footnote omitted).

We must agree with the trial court that these facts, viewed in the light most favorable to the Commonwealth, made it possible for the jury to infer that Appellant constructively possessed the drugs, and that he did so with the intent to deliver them. We also conclude that this matter is distinguishable from the case on which Appellant primarily relies, Commonwealth v. Valette, 613 A.2d 548 (Pa. 1992). There, our Supreme Court found the Commonwealth's evidence insufficient to prove that Valette constructively possessed drugs found during a raid of an apartment in which he was present, stressing:

> The record is clear that no contraband was found in the room in which [Valette] was sitting at the time entry was made by law enforcement officers; and, although $1500.00 in cash was found on a shelf in a closet located in that room, there was no evidence that [Valette] knew of its existence, or had access to it: nor is the possession of cash a crime. Moreover, no personal property of [Valette's] was located in the apartment. The Commonwealth placed great reliance on the "fact" that [a police] [o]fficer … asked [Valette] whether he lived at the premises and that [he] nodded in the affirmative. However, it was established at trial that

[Valette] did not speak English, and that the question to which [Valette] allegedly nodded was put to him solely in English.

Id. at 550-51. The Court also stressed that "the most significant quantity of drugs" was found "in a closed case located beneath floorboards" in a second-floor room, while Valette was on the first-floor at the time the police entered the apartment. Id. at 551. Based on these facts, the Court concluded that "the record demonstrate[d] nothing more than [Valette] was present in an apartment in which drugs were found[,]" which was insufficient to prove constructive possession. Id.

In contrast to Valette, here, there was evidence that Appellant was residing (at least temporarily) at the residence at 200 North Washington Street during the time-period spanning from his April 29, 2017 interaction with Lt. Grooms, to the May 4, 2017 search of the home. During that period of time, Lt. Johnson observed instances of suspected drug activity occurring at the home. While Lt. Johnson never saw Appellant engaging in any such activity, he testified that this fact was not unusual, as it is "very common for someone who is selling crack or heroin to set up inside a residence ... [and] have the buyers come to the house and they will go inside the house [to] make the purchase and come back out again[,] which doesn't require the person responsible to ever leave the house...." N.T. Trial at 52. Moreover, just hours before the search, officers conducted a controlled buy at the

residence when Appellant was present inside.[3]  Additionally, unlike in Valette,

Appellant was located in the same room as the drugs when officers executed

the warrant.  There were also drugs in plain view near Appellant.  These facts

make Valette distinguishable, and compel us to conclude that there was

sufficient evidence to prove that Appellant constructively possessed the drugs

found inside the home at 200 North Washington Street.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/18/2019

_____

[3] Lt. Johnson testified that after the controlled buy and prior to the search, only one person, Mary Boring, left the residence, thus demonstrating that Appellant was inside at the time of the buy.  N.T. at 62.

[4] We note that Appellant devotes a significant portion of his discussion to challenging the Commonwealth's closing argument that he was likely the "source of the controlled substances" because he is from Philadelphia. Appellant's Brief at 19 (quoting N.T. Trial at 85).  Appellant avers that this "argument was highly prejudicial…."  Id. at 20.  Initially, this claim is waived based on Appellant's failure to raise it in his Rule 1925(b) statement.  See Pa.R.A.P. 1925(b)(4)(vii).  Nevertheless, we would also conclude that the propriety of the Commonwealth's closing argument is not pertinent to our assessment of the sufficiency of the evidence to support Appellant's PWID convictions.