J-S75006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW WAYNE MORRIS | |
| Appellant | No. 403 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 19, 2019
In the Court of Common Pleas of Armstrong County
Criminal Division at No: CP-03-CR-0000046-2018

BEFORE:  STABILE, KUNSELMAN, and PELLEGRINI,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 13, 2020**

Appellant, Matthew Wayne Morris, appeals from the February 19, 2019 judgment of sentence imposing 15 to 30 months of incarceration for criminal trespass.[1]  We affirm.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On November 3, 2017, [Appellant] and the victim, Dawn Aldrich, were communicating back and forth via text message and on the social networking application "Snapchat."  [Appellant] and Ms. Aldrich prior to this time had been involved in an "on-again, off-again" relationship for several years.  That evening, [Appellant] had planned to come to Ms. Aldrich's house to talk.  As they continued to communicate by text message, they began to argue about whether either of them had put their Snapchat app

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S.A. § 3503.  The trial court imposed no further penalty for a criminal mischief (18 Pa.C.S.A. § 3304) conviction.

into "ghost mode." Snapchat's "ghost mode" prevents an individual with whom a user is messaging from seeing his or her physical location. When [Appellant] eventually arrived at Ms. Aldrich's home, he texted her to "open the door." Ms. Aldrich, not knowing [Appellant's] location, texted back, "no your lying."

Ms. Aldrich at this point had changed clothes and was in the basement doing laundry. On her way back upstairs, she heard a loud "thud" in the area of her backdoor. She initially thought someone outside had thrown something and hit the door. However, as she proceeded up the stairs, she heard a second "thud" and a cracking sound. When Ms. Aldrich entered the upstairs, [Appellant] was inside the house and the back door frame was cracked. [Appellant] then grabbed Ms. Aldrich by the neck and told her that he was going to "shoot her fucking brains out" if she did not talk. [Appellant] then retrieved Ms. Aldrich's keys from a table in the kitchen and left the residence to search her car. After [Appellant] exited the residence, Ms. Aldrich locked the deadbolt on the back door and called 911. The police arrived approximately 10 minutes later. [Appellant] had left by that point.

When the police arrived, Ms. Aldrich told them what happened. [Appellant] did not return to the house and took Ms. Aldrich's keys with him when he left. The police took photographs of the back door frame, which had a large crack. On the advice of police, and because [Appellant] had taken her house key, Ms. Aldrich left the residence and stayed at her parents' home with her two children for approximately the next month.

Trial Court Opinion, 4/5/19, at 2-3.

A jury found Appellant guilty of the aforementioned offenses—but not guilty of burglary, theft by unlawful taking, and terroristic threats—on September 11, 2018. He filed this timely appeal from the trial court's judgment of sentence on March 11, 2019. He raises two issues for our review:

1. The trial court erred in not granting judgment of acquittal on the charge of criminal trespass as there was no evidence presented that [Appellant] "broke into" the alleged victim's home (as that term is defined in 18 Pa.C.S.A. § 3503(a)(1)(ii)), particularly as there was no

- 2 -

testimony that the alleged victim's door was locked at the time of entry or that [Appellant] intimidated [the] alleged victim into opening the door.

2. The trial court erred in refusing to permit the alleged victim's ex-husband to testify as to her character for untruthfulness pursuant to Pennsylvania Rules of Evidence 404, 607, and 608.

Appellant's Brief at 4.

On a challenge to the sufficiency of the evidence, "our standard of review is *de novo* [and] our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420–21 (Pa. 2014).

As noted, Appellant argues his criminal trespass[2] conviction cannot stand because there is no evidence the victim's door was locked when Appellant entered her home. As set forth in the trial court's well-reasoned opinion, the record belies Appellant's argument. First, Appellant texted the victim in attempt to gain entrance to her home. This text would have been unnecessary absent a locked door. Second, the Commonwealth introduced evidence of a cracked doorframe. This circumstantial evidence, viewed in a

---

[2] "A person commits an offense if, knowing that he is not licensed or privileged to do so, he: […] (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii). "Breaks Into" means "To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." 18 Pa.C.S.A. § 3503(3).

light most favorable to the Commonwealth, supports an inference that Appellant broke into the victim's home as per § 3503(a)(3). We adopt the trial court's April 5, 2019 opinion in support of our rejection of Appellant's sufficiency of the evidence argument.

Next, Appellant argues the trial court erred in refusing to permit him to present the testimony of the victim's ex-husband regarding the victim's character for truthfulness. We review the trial court's evidentiary ruling for abuse of discretion. *Commonwealth v. Elliot*, 80 A.3d 415, 446 (Pa. 2013), *cert. denied*, 574 U.S. 828 (2014). Appellant's brief simply cites several Rules of Evidence but fails to develop any argument as to why the victim's character for truthfulness was pertinent in this case. We therefore deem Appellant's argument waived for failure to cite pertinent authority and pertinent portions of the record. Pa.R.A.P. 2119(b), (c); *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011). Were we to address this issue on the merits, we would reject it for the reasons explained in the trial court's April 5, 2019 opinion.

In summary, we find no merit to either of Appellant's arguments. We affirm the judgment of sentence based on the trial court's April 5, 2019 opinion, and we direct that a copy of that opinion be filed along with this memorandum.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2020

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA )
)
vs. ) No. CP-03-CR-0000046-2018
)
MATTHEW WAYNE MORRIS, )
Defendant. )

## <u>RULE 1925(a) OPINION</u>



EXHIBIT C

RR-180a

IN THE COURT OF COMMON PLEAS OF ARMSTRONG COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA )
                                )
           vs.                  )    No. CP-03-CR-0000046-2018
                                  )
MATTHEW WAYNE MORRIS,         )
              Defendant.      )

## RULE 1925(a) OPINION

**Panchik, P.J.**

Defendant Matthew Wayne Morris appeals from the judgment of sentence entered on February 19, 2019. Defendant was convicted by jury on September 11, 2018, of the following crimes: 1) criminal trespass[1], and 2) criminal mischief.[2] He was found not guilty of burglary, theft by unlawful taking or disposition, and terroristic threats. The Court sentenced Defendant to 15 to 30 months' incarceration on the criminal trespass charge, with 5 days' credit for time served. The Court imposed no further penalty on the criminal mischief charge.

Defendant filed a timely notice of appeal on March 11, 2019. On March 12, 2019, the Court ordered Defendant to file a Rule 1925(b) concise statement within 21 days. Defendant timely complied on March 29, 2019. In his concise statement, Defendant raises the following two issues for appeal: 1) whether this Court erred in not granting a judgment of acquittal on the criminal trespass charge, where there was insufficient evidence to prove that Defendant "broke into" the alleged victim's

---

[1] 18 Pa. Cons. Stat. Ann. § 3503(a)(1)(ii).

[2] 18 Pa. Cons. Stat. Ann. § 3304(a)(5).

home; and 2) whether this Court erred in refusing to permit the alleged victim's ex-husband to testify to her character for untruthfulness pursuant to Pennsylvania Rules of Evidence 404, 607, 608. The Court will address each issue in turn.

## I. SUMMARY OF THE EVIDENCE

Because Defendant challenges the sufficiency of the evidence in his first issue on appeal, the Court summarizes as follows the relevant evidence presented by the Commonwealth.

On November 3, 2017, Defendant and the victim, Dawn Aldrich, were communicating back and forth via text message and on the social networking application "Snapchat." Defendant and Ms. Aldrich prior to this time had been involved in an "on-again, off-again" relationship for several years. That evening, Defendant had planned to come to Ms. Aldrich's house to talk. As they continued to communicate by text message, they began to argue about whether either of them had put their Snapchat app into "ghost mode." Snapchat "ghost mode" prevents an individual with whom a user is messaging from seeing his or her physical location. When Defendant eventually arrived at Ms. Aldrich's home, he texted her to "open the door." Ms. Aldrich, not knowing Defendant's location, texted back, "no your lying."

Ms. Aldrich at this point had changed clothes and was in the basement doing laundry. On her way back upstairs, she heard a loud "thud" in the area of her backdoor. She initially thought someone outside had thrown something and hit the door. However, as she proceeded up the stairs, she heard a second "thud" and a

2

cracking sound. When Ms. Aldrich entered the upstairs, Defendant was inside the house and the back door frame was cracked. Defendant then grabbed Ms. Aldrich by the neck and told her that he was going to "shoot her fucking brains out" if she did not talk. Defendant then retrieved Ms. Aldrich's keys from a table in the kitchen and left the residence to search her car. After Defendant exited the residence, Ms. Aldrich locked the deadbolt on the back door and called 911. The police arrived approximately 10 minutes later. Defendant had left by that point.

When the police arrived, Ms. Aldrich told them what had happened. Defendant did not return to the house and took Ms. Aldrich's keys with him when he left. The police took photographs of the back door frame, which had a large crack. On the advice of police, and because Defendant had taken her house key, Ms. Aldrich left the residence and stayed at her parents' home with her two children for approximately the next month.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

#### 1. Standard of Review

In determining whether the Commonwealth has presented sufficient evidence to support Defendant's conviction for criminal trespass, the Court applies the following well-established test:

> Whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. . . .

3

> Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. . . . Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette*, 613 A.2d 548, 549 (Pa. 1992)(quotation and citations omitted). "The standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Thompson*, 779 A.2d 1195, 1197 (Pa. Super. Ct. 2001)(quotation and citation omitted). "The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. However, any questions or doubts are to be resolved by the factfinder, unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the circumstances." *Id.* (citation omitted).

2.    Analysis

Defendant argues in his first assertion of error that the Court erred by not granting a judgment of acquittal on the charge of criminal trespass because the Commonwealth did not present any evidence that he "broke into" the victim's home. (Notes of Testimony, "N.T.," at 64:11-65:17). The pertinent crime of criminal trespass is defined in section 3503(a)(1)(ii) of the Crimes Code:

(a) Buildings and occupied structures.--

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

4

**RR-184a**

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(2) An offense under paragraph (1)(i) is a felony of the third degree, and an offense under paragraph (1)(ii) is a felony of the second degree.

(3) As used in this subsection:

"Breaks into." To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

18 Pa. Cons. Stat. Ann. § 3503. Defendant was charged with and convicted of a violation of subsection 3503(1)(ii), which is a felony of the third degree and requires proof that Defendant entered the victim's home "by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." *Id.*, § 3503(3). To sustain a conviction under subsection 3503(1)(ii), the Commonwealth must establish that a defendant utilized force greater than that required merely to enter through an unlocked door. *See Commonwealth v. Cook*, 547 A.2d 406, 410-11 (Pa. Super. Ct. 1988).

The Court concludes that the Commonwealth presented sufficient, and indeed strong, circumstantial evidence from which the jury could conclude that Defendant broke into the victim's home without privilege to do so. Ms. Aldrich testified that she had been communicating with Defendant on the evening of November 3, 2017, and that she did not know where he was because his Snapchat app was in "ghost mode." The text messages introduced by the Commonwealth corroborate that testimony. Further, there is clear evidence that the door was locked just prior to Defendant's entry. When Defendant texted Ms. Aldrich to "open

**RR-185a**

the door," she replied, "no your [sic] lying." Quite obviously, if Defendant were intent on entering the house, there would be no need to ask Ms. Aldrich to open the door if it were unlocked. Ms. Aldrich also testified that she was on her way up the steps out of her basement when she heard loud "thuds" and a cracking noise just prior to arriving upstairs to find Defendant in the house. Together with the photographs taken of Ms. Aldrich's broken door frame, this evidence, considered in the light most favorable to the Commonwealth, was sufficient to prove that Defendant was not privileged to enter the house and used enough force to open the locked door and break the door frame. Defendant's argument that the evidence was insufficient in this regard is without merit.

## B. TESTIMONY OF MICHAEL ALDRICH

Defendant argues secondly that the Court erred in not permitting Ms. Aldrich's ex-husband to testify in Defendant's case-in-chief. (N.T., at 81:20-84:9). Defendant proffered Michael Aldrich, Ms. Aldrich's ex-husband, to testify to certain unspecified "personality traits" of Ms. Aldrich. *Id.*, 82:4-8. Defendant contends now on appeal that Mr. Aldrich was being proffered to testify to Ms. Aldrich's "character for untruthfulness." The Court continues to conclude that Mr. Aldrich's testimony properly was excluded.

### 1. Standard of Review

On appeal, this Court's evidentiary rulings are reviewed for abuse of discretion. *Commonwealth v. Walter*, 93 A.3d 442, 449 (Pa. 2014). An abuse of discretion occurs when "the law is overridden or misapplied, or the judgment

6

exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence of record." *Commonwealth v. Cooper*, 941 A.2d 655, 667 (Pa. 2007). Moreover, even if a trial court errs in precluding the admission of certain evidence, the error is harmless if it is established that 1) the error did not prejudice the defendant or the prejudice was *de minimus*, or 2) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Laich*, 777 A.2d 1057, 1062-63 (Pa. 2001).

### 2. Analysis

Pennsylvania Rule of Evidence 404(a) sets forth certain circumstances in which substantive character evidence may be introduced to prove particular character traits. Rule 404(a)(1) provides that, as a general rule, such evidence is not admissible to prove that an individual's actions conform to a particular character trait. Rule 404(a)(2) establishes certain exceptions to this general rule in criminal cases. Relevant in this case, Rule 404(a)(2)(B) provides that "subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's *pertinent* trait, and if the evidence is admitted the prosecutor may (i) offer evidence to rebut it; and (ii) offer evidence of the defendant's same trait; . . . ." Pa. R. Evid. 404(a)(2)(B)(emphasis provided). Further, if an alleged victim also is a witness, Rules 607 and 608 permit the impeachment of the witness's truthfulness in certain limited circumstances. Truthfulness may not, however, be attacked by extrinsic

7

evidence of particular acts other than certain criminal convictions. *See* Pa. R. Evid. 608(b)(1), 609. Testimony about a witness's character for truthfulness or untruthfulness is permitted. Pa. R. Evid. 608(a).

Here, defense counsel did not proffer Mr. Aldrich as a character witness to impeach the Ms. Aldrich's credibility by establishing her reputation for untruthfulness. Rather, it appears that Mr. Aldrich's testimony was proffered for purposes of proving that Ms. Aldrich herself was a violent or aggressive individual, perhaps instigating certain instances of conflict between her and Mr. Aldrich. (N.T., at 82:4-8; 82:24-83:5). Such testimony would not have been admissible under Rules 607 and 608, as it would not have tended to prove Ms. Aldrich's *reputation* for being untruthful. It also was not admissible under Rule 404(a)(2)(B). That subsection permits admission of character evidence for "pertinent" traits, i.e., those relevant to the crimes charged. If Defendant intended to establish that Ms. Aldrich was herself aggressive or violent, such trait had nothing to do with whether Defendant broke into her home without her permission. Although Ms. Aldrich testified that Defendant grabbed her neck after entering her home, no charges resulted from that interaction. Ms. Aldrich's character for being aggressive or violent thus was irrelevant. *See* Comment, Pa. R. Evid. 404(a)(2)(B)("For example, in an assault and battery case, if the defendant introduces evidence that the alleged victim was a violent and belligerent person, the Commonwealth may counter by offering evidence that the defendant also was a violent and belligerent person.

8

**RR-188a**

Thus, the jury will receive a balanced picture of the two participants to help it decide who was the first aggressor.").

Further, even if Mr. Aldrich's testimony otherwise was admissible, the Court's preclusion of it was harmless error. Even assuming that Mr. Aldrich gave a "synopsis" of his marriage with Ms. Aldrich, *see* N.T., at 82:4-8, such testimony would have had little if any impact on the jury's consideration of whether Defendant committed the acts of criminal trespass or criminal mischief. The clearest and strongest evidence of those crimes, particularly of criminal trespass, was the broken door frame in Ms. Aldrich's house. That fact, coupled with the text messages introduced, sufficiently corroborated Ms. Aldrich's testimony that she heard loud thuds and cracking noises at her back door as she walked up the stairs to find Defendant inside the house. Any prejudice to Defendant therefore was nonexistent or *de minimus.* And, given the other circumstantial evidence of guilt, there is little to no possibility that the exclusion of Mr. Aldrich's testimony contributed to the guilty verdicts in this case.

For all of these reasons, and for the additional reasons set forth by the Court in the record, the Court recommends affirmance of Defendant's convictions and sentence in their entirety.

Respectfully submitted,

Dated: April 5, 2019

Ja mes J. Panchik, P.J.

9

Certified from the Record
this 5th day of April , 20 19 A.D.

Brenda C. George,
Prothonotary and Clerk of Courts
Armstrong County, Pennsylvania

MY COMM. EXPIRES 1ST
MON. JAN. 2020
RR-190a