J-S11043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JULIAN ROBINSON | : | |
| | : | |
| Appellant | : | No. 1633 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 2, 2022
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0005059-2019

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                              **FILED JULY 12, 2023**

Appellant, Julian Robinson, appeals from the judgment of sentence, entered in the Lehigh County Court of Common Pleas, following his jury trial conviction for persons not to possess firearms and bench trial conviction for the summary offense of driving without a license.[1]  We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> [T]he evidence established that on the afternoon of November 24, 2019, at approximately 12:30 P.M., Sergeant Dathan Schlegel of the Upper Macungie Police Department served a Protection From Abuse [("PFA")] Order on [Appellant] near his place of employment at Windkits on Penn Drive [in] Allentown…. Specifically, earlier in the day, Sergeant Schlegel had received a telephone call from the Easton Police Department requesting that he serve [Appellant] with a [PFA] Order that was obtained by

_____

[1] 18 Pa.C.S.A. § 6105(a)(1) and 75 Pa.C.S.A. § 1501, respectively.

[Appellant's] girlfriend, Ishona Thompson. A member of the Easton Police Department was not able to serve the PFA Order because the warehouse where [Appellant] worked at was not within the jurisdiction of the Easton Police Department. The Easton Police Department provided Sergeant Schlegel with the necessary information, including a photograph of [Appellant] from his Pennsylvania Identification Card and the description of the vehicle that [Appellant] was driving.[4]

> [4] [Appellant] did not possess a valid license to drive a vehicle from the Commonwealth of Pennsylvania, but rather a Pennsylvania Identification Card.

In compliance with typical protocol of the Upper Macungie Police Department, Sergeant Schlegel requested assistance to serve the PFA Order upon [Appellant], as domestic situations are volatile by nature. Sergeant Schlegel arrived in the location of [Appellant's] place of employment and located the subject vehicle, a silver Kia Optima, within the parking lot of the Windkit warehouse facility. Sergeant Schlegel then parked his police cruiser down the street from [Appellant's] place of employment and waited for back up to arrive on scene. However, a few minutes later, Sergeant Schlegel observed [Appellant] leaving the parking lot in the silver Kia and drive past him on Penn Drive. Sergeant Schlegel conducted a traffic stop of the vehicle.

[Appellant] was the sole occupant of the vehicle. Sergeant Schlegel approached the vehicle and he requested that [Appellant] exit the vehicle, patted him down for weapons, confirmed his identity, and explained and provided him with the PFA paperwork. Additionally, [Appellant] indicated to Sergeant Schlegel that he did not possess a firearm or ammunition, and he executed a Relinquishment of Firearm Form in conjunction and compliance with the PFA Order. At this time, [Appellant] was free to leave, but he was unable to drive the Kia Optima because he did not have a valid driver's license and his girlfriend, the victim of the PFA, was the registered owner of the vehicle and she wanted her sedan back. Consequently, [Appellant] asked Sergeant Schlegel for his wallet, cell phone, and charger that were located in the front of the vehicle. These items were provided to [Appellant] and he walked back to his place of

- 2 -

employment on Penn Drive.

Sergeant Schlegel remained on scene with the vehicle. He contacted [Appellant's] girlfriend, Ms. Thompson, and explained to her the location of the vehicle for her to come and retrieve it. Ms. Thompson arrived shortly thereafter, with another woman. Upon her arrival, Ms. Thompson immediately asked Sergeant Schlegel if he would search her vehicle. She then attempted to pop the trunk with her set of keys, but was unsuccessful because [Appellant] had left his keys in the ignition. Therefore, Ms. Thompson utilized that set of keys to open the trunk. Upon looking inside the trunk, Sergeant Schlegel observed on the driver's side of the trunk a pair of men's size 11½ black Nike Jordans,[6] and contained within the right sneaker was a handgun with the grip sticking out. Sergeant Schlegel took custody of the pair of sneakers and carried them to his patrol vehicle where he made the firearm safe. The firearm, a Taurus semi-automatic 9mm Millenium G2, was fully functional per the results of functionality testing, and the magazine had twelve (12) live rounds in it and there was one (1) bullet in the chamber.

> [6] At the time of this incident, [Appellant] was wearing similar shoes to the black Nike sneakers located in the trunk of his vehicle. In fact, [Appellant] conceded that the men's size 11½ black Nike sneakers were his.[2]

Upon returning to the Upper Macungie Police Department, Detective Adam Miller entered the firearm into evidence. He dusted the firearm, magazine, and bullets for fingerprints. No fingerprints were lifted from these items. In furtherance of the investigation, Detective Miller also swabbed the gun (both the exterior and the interior), and the bullets in an attempt to collect samples of DNA for analysis. The swabs were sent out to the Pennsylvania State Police Crime Lab in Bethlehem, Pennsylvania for analysis and testing. Furthermore, Detective Miller obtained a search warrant for

---

[2] Defense counsel made this concession during his closing argument when he stated: "And, now, we have a shoe, sneakers that are 180 septillion times likely to be [Appellant's]. I'll tell you that they're his shoes." (N.T. Trial, 3/16/22, at 133).

a buccal swab sample from [Appellant] in order to provide that to the Pennsylvania State Police Crime Lab for comparison purposes. Additionally, the Nike sneakers were also sent out for testing and analysis. Thomas Rataic, an expert in the field of DNA profiling and testing with the Pennsylvania State Police Crime Lab, tested the DNA samples provided. Specifically, Mr. Rataic processed the samples, interpreted the data, and compared them to the reference DNA provided by [Appellant]. With regard to the firearm, the results from the exterior of the gun indicated that there were three (3) DNA profiles present. Mr. Rataic compared [Appellant's] DNA obtained from the buccal swab to the profiles on the firearm. He opined to a reasonable degree of scientific certainty that it was sixty-three (63) sextillion times more likely that the DNA came from [Appellant] and two (2) other individuals than three (3) unknown profiles. Insufficient sample of DNA was obtained to analyze the bullets. With regard to the Nike sneakers, the results indicated that there were four (4) DNA profiles present. Mr. Rataic compared [Appellant's] DNA obtained from the buccal swab to the profiles on the Nike sneakers. Mr. Rataic concluded to a reasonable degree of scientific certainty that it was one-hundred and eighty (180) septillion times more likely that the DNA came from [Appellant] and three (3) other individuals than four (4) unknown profiles.

In addition, Katherine Cross, an expert in the field of DNA and forensic analysis, reviewed the DNA and serology reports, as well as Mr. Rataic's reports and conclusions. Ms. Cross found that Mr. Rataic's methodology, procedure, and analysis were appropriate. However, Ms. Cross opined that, based on Locard's Exchange Principle, it is possible that the DNA transferred from [Appellant's] Nike sneakers to the firearm found therein, or possibly vice versa.

[Appellant] and his girlfriend spoke via the telephone after this incident. Their telephone conversations were recorded and preserved. [The Commonwealth entered recordings of the conversations into evidence at trial.[3] During the

_____

[3] At trial, the Commonwealth submitted discs containing the recorded phone calls, and it played the discs for the jury. (*See* N.T. Trial, 3/16/22, at 63-69).
*(Footnote Continued Next Page)*

- 4 -

conversations, Appellant and his girlfriend discussed the circumstances surrounding Appellant's interaction with the police. Specifically, Appellant insinuated that his girlfriend asked police to search the vehicle because she knew that police would discover a firearm.]

(Trial Court Order and Opinion, filed 5/19/22, at 3-7) (internal record citations and some footnotes omitted).

Appellant's first trial commenced on September 20, 2021. After deliberating, the jury became deadlocked. On September 27, 2021, the court declared a hung jury and granted a mistrial. Appellant proceeded to a second jury trial on March 15, 2022. On March 17, 2022, the jury found Appellant guilty of persons not to possess firearms. The court also found Appellant guilty of the summary offense of driving without a license. On May 2, 2022, the court sentenced Appellant to an aggregate term of five (5) to ten (10) years' imprisonment, plus fines and costs. That same day, Appellant timely filed a post-sentence motion challenging the weight of the evidence. The court denied Appellant's post-sentence motion by order and opinion filed on May 19, 2022.

On June 21, 2022, Appellant timely filed a notice of appeal.[4] On June 22, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise

_____

Although the discs are not contained in the certified record on appeal, the trial court opinion quoted several portions of the conversations at issue. (**See** Trial Court Opinion at 7-10).

[4] Appellant timely filed his notice of appeal on the Tuesday after the Juneteenth holiday.

statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on July 12, 2022.

Appellant now raises two issues for our review:

Whether the evidence was sufficient to sustain [Appellant's] conviction for persons not to possess a firearm if the evidence of possession was conflicted, unclear, or otherwise confusing?

Whether the verdict was against the weight of all the evidence in regards to the proof of whether or not [Appellant] was properly proven to have the necessary possession of the firearm to justify the conviction?

(Appellant's Brief at 4).

Appellant's two issues are related, and we address them together. Appellant contends that the Commonwealth linked him to the firearm "based primarily on DNA evidence retrieved from the firearm and the sneaker in which it had been located in the trunk of the vehicle." (*Id.* at 7). Appellant maintains that "the DNA evidence and the experts' reports were contradictory and could not support the proof beyond a reasonable doubt that [Appellant] possessed the firearm." (*Id.*) Specifically, Appellant insists that the presence of his DNA on the firearm "could only prove that the gun came in contact with something that had some of [Appellant's] trace DNA on it and that was transferred to the exterior of the gun." (*Id.* at 12-13). Under the totality of these circumstances, Appellant concludes that the Commonwealth presented insufficient evidence to support the firearms conviction, and the verdict was against the weight of the evidence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

Additionally,

> The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may

> only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

> ***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellant court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Uniform Firearms Act provides, in relevant part, as follows:

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

> **(a) Offense defined.—**

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005) (quoting ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa.Super. 1996)). "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance

and the intent to exercise that control." ***Id.*** "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Id.*** "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Valette***, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied,* 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, the Commonwealth's evidence established that Appellant was the driver and sole occupant of the vehicle stopped by Sergeant Schlegel. Sergeant Schlegel stopped the vehicle to serve Appellant with PFA paperwork. After the stop, Appellant's girlfriend arrived at the scene and asked the sergeant to search the trunk. Sergeant Schlegel and Appellant's girlfriend used Appellant's vehicle key to open the trunk. Inside the trunk, the sergeant found a firearm stuffed inside Appellant's sneaker. Both the firearm and the sneaker contained Appellant's DNA.

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported the firearms conviction. ***See Sebolka, supra***. Despite Appellant's arguments to the contrary, it was

- 9 -

reasonable for the jury to infer that the presence of Appellant's DNA on the firearm constituted circumstantial evidence of constructive possession. ***Id.*** Under the totality of these circumstances, the Commonwealth demonstrated Appellant's conscious control or dominion over the contraband. ***See Jones, supra***. Moreover, the court evaluated Appellant's post-sentence motion and determined that the verdict was not so contrary to the evidence as to shock one's sense of justice. Based upon the foregoing, we cannot say that the court abused its discretion in reaching this conclusion. ***See Champney, supra***. Therefore, Appellant is not entitled to relief on his appellate claims, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2023